The next matter on our calendar is Kevin Ganley v. Westchester Medical Center and others. I understand all the parties wish to speak for a minute and a half each, so we'll accommodate that. We'll hear first from Mr. Ganley. Good morning, court. Good morning. I'm here today as a plaintiff in this case. In this case involving psychiatric criminal malpractice fraud. This started back in 1994 and it started out in the beginning as a simple, if you read the record, a simple domestic violence case. At the time, I was a dedicated and honorable New York City police officer. Married to the defendant, Ms. Sandler. The appellee. During this period, there was some marital issues, whatever, that I, as a New York City police officer, understanding domestic violence and the cruelty behind it. I explained a very simple situation to Ms. Sandler, who I was married to at the time. Ms. Sandler then decided to, unfortunately, seek the help of others rather than work with me to resolve the situation. Unfortunately, at the time, this continued on and I now became a victim of very serious domestic violence as a man at the hands of Ms. Sandler. I never once threatened Ms. Sandler. I was going to cause her any harm. I'm trained as a New York City police officer when I passed all my 6th precinct, and I've been on many domestic violence cases. So I reasonably tried to settle this. Well, straight now, you confess. You confess. Mr. Ganley, I want to say that we've read the papers and know the facts. But there are some legal issues before us today. Yes. Can you speak to those? Okay. The legal issues on this, according to the, from my brief. Question number one was, did the district court err by determining that equitable tolling was inapplicable with respect to the defendant's affirmative defenses of expiration of the applicable statute of limitations? Yes. I presented this case to the court. Prior to presenting this case, between 1994 and 2013, if you understand the psychological, traumatic effects of becoming a victim of this horrible, horrible crime. Okay? Based upon my family, my maternal family, my family's history of mental illness, that somehow they concluded that I had the same. That was horrible. And then, as I stated here, and in my papers repeatedly, repeatedly, between 1994 and 2013, the horrible crime, civil and human rights violations that was committed against me. And I don't want to traumatize the court or anyone else in here. That was horrible. That was horrible. Prisoners in Guantanamo Bay, okay, are treated better than the way I was treated by these people. This is horrible. So, as I stated to the court, between 1994 and 2013, and it was further relayed through Dr. Arkaya, who knows all about these cases, okay? I was nothing more than in an incapacitated, altered state of mind and reality from what happened to me. And it started in the beginning when I was placed from an emergency room, okay? White Plains Hospital, where I was going to call the police and call the counseling unit and report that I am a victim of psychological domestic violence. I need to call your attention to the timer. You have three minutes for rebuttal. You can use that now or you can wait and hear what the defendants, defendant appellees say and then respond to that. Okay, I'd like to hear that. Have a seat. And we'll hear from them. They've each asked to speak for a minute and a half. So we'll start in the order they signed in, City of New York, is that you, counsel? Yes, thank you, Your Honor. May it please the court. My co-appellees will be addressing the issue of equitable estoppel, and I join their arguments and will briefly address the issue of municipal liability. Your Honor, Scandley's suit against the city was fatally defective because he failed to adequately plead a claim for municipal liability. He neither pled nor argues in his briefs that any city policy or federal civil rights claim against the city. And in terms of his state law claims, he neither pled nor argues that he pled, that he complied with the notice of claim requirement. That's a prerequisite for bringing state law tort claims against the city. For these reasons, because there was no adequate pleading of municipal liability and no argue that he satisfied such, the dismissal of the complaint as to the city was proper. And we adjoin the argument as to equitable estoppel as well. Thank you. Thank you, Your Honor. Next, we'll hear from Westchester Medical Center. Is that you? Westchester. What is this? Who are you? Your Honor, my name is David Bloom. I represent the defendant Appelli Carol Blitstein. I'm going to address the issue of equitable tolling. And I'm going to ask this court to respectfully affirm the dismissal of the action because Mr. Ganley has not established his entitlement to that relief. And also, I'll also address, with respect to Ms. Blitstein, the claim against her is essentially a 1983 conspiracy claim. Mr. Ganley does not have a viable cause of action in that regard. Mr. Ganley has not alleged any facts to suggest that he was so incapacitated such that he was unaware of his causes of actions or prevented in some extraordinary way from exercising his rights. I mean, if we look at his own pleadings, you see that he started feeling better, as he admits, after therapy. He admits that he was able to divorce his wife and obtain a protective order. For years, he's been a self-employed member of the community. He's now raising a family, and- At what point, based on the pleadings, should he have become aware? I would submit at least the late 90s, when he started these proceedings against his wife. I mean, I think it's pretty clear that he was able to protect his rights at that point. Mr. Ganley, a reference to some post-traumatic stress. But PTSD, even if they were just symptoms alone, that's not sufficient to establish a right to equitable tolling of the limitations period. Regarding the 1983 claim, conspiracy against Ms. Blitstein, Mr. Ganley did not plead with the required particularity. Any overt acts of a concerted effort with other state actors. He claims that he might have had traumatic transference syndrome, which suppresses memory. That's true. Is that a possible basis for equitable tolling? No, Your Honor, my understanding is that equitable tolling, it's reserved for very severe cases. And there's no indication from the pleadings that Mr. Ganley was so incapacitated that he was unable to protect his rights. Anything less than a coma? That would, I'm just trying to understand your position. Well, of course. I mean, if he was unable to speak, if he was unable to understand what was going on, I would admit that there are less severe circumstances, but we have to look at what's alleged in the pleadings. And here he states that he was able in the late 90s to seek counsel. That's fair, I'm just trying to understand. I understand, that's fine. So I would rest on my brief, if the court has no other questions. Thank you. Next on my list is Westchester Medical Center. William Babe, Your Honor, for Westchester Medical Center. Based upon the amended complaint, he was a patient there sometime in the late 90s, 1990s, for an indefinite period of time. And as has been pointed out, once he was discharged from St. Vincent's, which was apparently the last institution where he was an inpatient, 14 years went by before this complaint was filed. And there is nothing in his papers, the medical attachments do not establish the high standard that he would require to justify an equitable estoppel for that period of time. Thank you very much. Thank you. Next, Charles Collins for St. Vincent's. Good morning. May it please the court. I think that on behalf of the appellee, St. Vincent's, we would adopt the arguments that have been propounded by the co-appellees. And I would rely upon the brief that was already submitted in the action. Thank you. Michael Romano, on behalf of White Plains. Kelly Sadler, Pro Se. Good morning. Quite astonished as to the allegations that are being made against me, especially considering that Mr. Ganley is alleging that he filed for divorce from me. He didn't. I filed for divorce and was granted a divorce in 1997. We had marital issues, yes. I was dealing with someone that was very difficult to deal with. I went on a three week trip to Europe and came home to someone that just was not the person that I was married to and the ball began rolling when he took himself to White Plains Hospital and there his journey began. I was excluded from whatever communications he was having with the White Plains Police Department. White Plains Police Department, New York City Police Department, the hospitals. The only communications I had with were Carol Blitzstein, which was our marital therapist. He's now alleging that I conspired by having a conversation with her in a waiting room. The only issue in front of us is whether Mr. Ganley was in such a state that he would be excused from filing. The fact, whatever factual assertions he may have made are not relevant to us. And I appreciate that they seem extraordinarily relevant to you and affect you. But just as he was discussing those matters and Judge Pooler reminded him that we were here to talk about the law, about his eligibility for tolling, the only thing we're really interested in is, was he in such a mental state that he was incapable of seeking relief in the courts and should be excused for the period of time from 1994 to 2013? No, I don't believe that he is. The gentleman took himself in and out of hospitals, admitted himself to Arms Acres, trying to prove to everybody that he was mentally ill, I'm sorry, that he was an alcoholic. He started a business that he ran out of our home, which he's run for several years, snow plowing, not paying taxes, of course. And has since put a house up across the street from me, in which he was able to engage in legal arguments with the person that he had acquired the land from and prevail. And has run businesses, so yes, I believe that the man is, he's capable. I'm the unfortunate victim of having married this man, having been physically assaulted, emotionally assaulted, and having my character essentially defamed. When in fact, what he's alleging is what was done to me. I filed for divorce from the man, he wouldn't give me a divorce. I spent two years trying to get a divorce, he did not file for divorce, I did. I separated myself from this man, and to be dragged through this is horrendous. Thank you. Thank you. So Mr. Gatley, you've heard from all the people you've sued, and they all claim that you waited too long to bring this action. What's called the statute of limitations, and that's in some occasions we told, that is we give you a break if you're unable to bring the lawsuit. But that is the claim that you have to make, that since this happened, these terrible things happened in the 1990s, you've been unable to bring the lawsuit sooner than now. Yes, exactly, and repeatedly in my argument and in my briefs, I explain based upon my research, my research and my investigation in depth into all this. That started in 2013 when I had to stop working, stop working, and start to study all this, of what happened to me. Because between- 2013 was already late for the actions that happened in the 1990s. That's the point of almost every party here. Yes, now speaking as coma, coma, if you go back to 1994, when I was downstairs at White Plains Hospital, ready to call the police on my wife, and Ms. Blitzstein intervened, and then I was led up to a locked psychiatric ward. At that time, a lone doctor- I assume that you were incompetent at that moment in time, wait a second. When did you remarry? My second wife? She's really not my, if you really look at the state of altered state of mind. Altered state of mind, I was in a coma. Between 1994 and 2013, then I suddenly appeared, I suddenly woke up. Do you have a doctor that told you that? Excuse me? Do you have a doctor that told you that? Doctor Ortega can testify to that. Did you make a reference to that in your complaint? Yes. I was in another world. You were in a coma physically? A mental coma. You were in an altered- State of, altered state of mind and reality. Between 1994 and 2013, you were able to- Suddenly- Father to child. But there, answer that question. What? Go ahead, ask the answer. I was like a kid. You were a kid, but you were a subcontractor. You had a snow plowing job, is that correct? Well, you have children- Just answer that question, is that correct? Yes. Yes, okay. I was functioning. I was functioning. I had a disability. To date, Ms. Paulson, I still don't understand what my disability was from retirement from the police department. You also made a very specific argument that you can't sue the city without filing certain papers in advance. You didn't do that. You can't get into court unless you do that. I was incapacitated. I sustained very serious cognitive disabilities, mental retardation. I was not mental. I was given drugs, and then when I complained about it, I was given a chemical lobotomy. And I almost died, and Ms. Sandler was present during that. She is a material witness of fact in this case, because she saw what this psychiatric fraud did to me. Well, your time has expired. We have your argument, and more than that, we have your papers, and we've read your papers. So I will thank you all until you will reserve decision. Thank you all. Thank you.